RAPCO, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rapco, Inc. v. Commissioner
Docket No. 15270-93
United States Tax Court
T.C. Memo 1995-128; 1995 Tax Ct. Memo LEXIS 127; 69 T.C.M. (CCH) 2238; March 27, 1995, Filed *127 Decision will be entered under Rule 155. For petitioners: Frank W. Louis. For respondent: Robert E. Marum. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's income tax as follows: Additions to Tax
Tax Year
Sec.
Sec.
Ended Deficiency
6651(a)(1)
6653(a)(1)
5/31/88
$ 199,102
$ 12,932
--
5/31/89
138,470
--
$ 7,919.30
5/31/90
168,616
--
--
Additions to tax
Tax Year
Sec.
Sec.
Sec.
Ended
6653(a)(1)(A)
6653(a)(1)(B)
6662
5/31/88
$ 23,366
50 percent of
--
interest due
on $ 12,570
5/31/90
--
--
$ 8,705.45
After concessions, the issue remaining for decision is whether compensation deductions claimed by petitioner for services rendered by Richard A. Polidori (Polidori) during the taxable years ended May 31, 1988, through May 31, 1990, exceed a reasonable amount. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated *128 facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner's principal place of business was New Britain, Connecticut. Petitioner was incorporated on May 1, 1979, and was involved in the automobile salvage business. During the years in issue, petitioner had several 100-percent subsidiaries and filed income tax returns on a consolidated group basis. Polidori held 83 percent of petitioner's stock for the year ended May 31, 1988, and held 95 percent of petitioner's stock for the years ended May 31, 1989, and May 31, 1990. From May 1, 1979, through the tax year ended May 31, 1990, petitioner did not declare or pay dividends. Polidori became involved in the automobile salvage business in 1969. Petitioner's auto salvage business was based on the concept of providing a central auction location for the sale of "junk" or "totaled" autos for sellers such as insurance companies. By picking up the autos from garages and body shops, storing them, and providing a central auction location, petitioner was able to reduce the costs incurred by insurance companies and to generate a higher return on the sale of their salvage. Petitioner began the *129 expansion of its auto salvage business by opening operations as subsidiary corporations to serve as satellite offices in New York in 1981 and in Pennsylvania in 1986. Polidori had principal responsibility for locating the sites for the new operations, obtaining appropriate zoning, and managing other aspects of starting up new operations. Polidori also formed and owned the following subchapter S corporations (S corporations), which operated as satellite offices for petitioner outside the consolidated group: Year of
Polidori's
Name
Incorporation
State
Ownership NER--Mass.
1985
MA
94%
NER--Pitt.
1988
PA
94%
NER--Ohio
1989
OH
80%
Polidori was aware of the risk of liability stemming from environmental regulations and thus formed these entities as separate S corporations, because he did not want to put the entire salvage operation at risk by having all of the assets in one corporation. During the years in issue, petitioner operated as the central administrative office for the subsidiary and S corporation satellite operations, which were the actual operating locations. Almost all of the administrative functions, such as personnel and finance, were handled *130 by petitioner. The satellite operations paid management service fees to petitioner; petitioner determined, informally, the amounts that would be charged to its subsidiaries and the S corporations. Petitioner reported $ 1,270,000, $ 1,607,000, and $ 1,931,000 as administrative service fee income for its fiscal years 1988 through 1990, respectively. On its income tax returns, petitioner reported taxable income as follows: Tax Year
RAPCO, Inc. Ended RAPCO, Inc. and Subsidiaries
5/31/88
$ 10,887 $ 617,354
5/31/89
19,410 1,528,481
5/31/90
(14,062)
1,799,723
Petitioner reported total consolidated income on its income tax returns as follows: Tax Year
Ended Total Income
5/31/84
$ 2,883,292
5/31/85
3,738,565
5/31/86
6,574,758
5/31/87
7,400,867
5/31/88
10,359,578
5/31/89
12,311,331
5/31/90
13,733,121
During the years in issue, petitioner employed approximately six people, including, as officers: Polidori, president; Richard Balducci (Balducci), vice president; Darlene Ozga (Ozga), vice president; and Gordon Van Valkenburg (Van Valkenburg), treasurer/secretary. Polidori, Balducci, Ozga, and Van Valkenburg also served as directors *131 of petitioner. Petitioner paid the following amounts as salary and bonus to its officers: Tax Year Ended
Form Polidori
Balducci
Ozga
Van Valkenburg 5/31/80
Salary
$ 34,400
$ 28,223
$ 18,600
--
Bonus
4,000
--  1,000
--
5/31/81
Salary
41,895
39,451
22,275
--
Bonus
5,000
--  1,500
--
5/31/82
Salary
50,600
47,695
28,520
--
Bonus
1,000
1,000
1,000
--
5/31/83
Salary
56,600
51,220
43,100
--
Bonus
--  --  --  --
5/31/84
Salary
62,000
56,904
57,013
--
Bonus
3,000
--  --  --
5/31/85
Salary
130,506
60,807
71,031
--
Bonus
--  --  --  --
5/31/86
Salary
105,008
75,621
79,748
--
Bonus
300,000
15,000
--  --
5/31/87
Salary
77,646
100,522
90,140
--
Bonus
500,000
20,000
10,000
--
5/31/88
Salary
100,008
121,818
100,224
$ 75,167
Bonus
600,000
20,000
10,000
40,000
5/31/89
Salary
266,668
141,798
101,920
101,326
Bonus
500,000
25,000
5,000
40,000
5/31/90
Salary
300,000
141,886
111,980
79,992
Bonus
600,000
25,000
10,000
40,000
Petitioner issued a check to Polidori dated May 31, 1988, in the *132 amount of $ 180,000, which represented Polidori's $ 600,000 bonus net of withholdings and a loan repayment, and checks to Polidori dated May 31, 1989, and May 31, 1990, in the amounts of $ 300,000 and $ 350,000, which represented Polidori's bonuses, net of withholdings, for those respective years. Minutes from board of directors meetings during the years in issue indicated that the directors' formal resolution to distribute bonuses to Polidori and other employees was made on July 12, 1988, for the tax year ended May 31, 1988; on June 10, 1989, for the tax year ended May 31, 1989; and on June 20, 1990, for the tax year ended May 31, 1990. Preincorporation minutes included a corporate resolution that petitioner would pay bonuses to officers based upon a formula; once bonus conditions were met, the president was to receive a bonus of 25 percent of the net operating profits that was limited to a maximum of 35 percent of base salary. However, the salary/bonus structure for the officers of petitioner that was effective during the years in issue was not reduced to writing. No compensation studies were prepared for the officers and employees of petitioner, and no portion of the compensation *133 that was paid to Polidori during the years in issue represented compensation for past services. Polidori made all of the decisions relating to the compensation of himself, Balducci, Ozga, and Van Valkenburg; however, Van Valkenburg made recommendations to Polidori regarding Polidori's compensation. Petitioner also had a pension and profit sharing plan in effect for its employees, including Polidori, during the years in issue. In his role as president, Polidori was responsible for increasing business; making acquisitions; purchasing equipment; hiring management trainees and key employees; and overseeing expansion, sales, and operations, generally. Polidori inaugurated the use of a computer system that ultimately allowed for communication between petitioner and its clients, introduced video sales presentations to existing and potential insurance clients of petitioner, and established an operations manual for petitioner. Polidori visited each satellite location not less than once every 2 months. Respondent determined that of the bonuses that were paid to Polidori, the amounts of $ 564,997, $ 406,666, and $ 495,000 for petitioner's fiscal years 1988, 1989, and 1990, respectively, *134 were unreasonable. OPINION Section 162(a)(1) allows as a deduction "a reasonable allowance for salaries or other compensation for personal services actually rendered". Section 1.162-9, Income Tax Regs., provides that bonuses paid to employees are deductible "when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered." Whether an expense that is claimed pursuant to section 162(a)(1) is reasonable compensation for services rendered is a question of fact that must be decided on the basis of the particular facts and circumstances. Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). The burden is on petitioner to show that it is entitled to a compensation deduction larger than that allowed by respondent. Rule 142(a); Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1324 (5th Cir. 1987), affg. T.C. Memo. 1985-267. *135 The cases contain a lengthy list of factors that are relevant in the determination of reasonableness, including: The employee's qualifications; the nature, extent, and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with gross income and net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and the amount of compensation paid to the particular employee in previous years. Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir. 1949), affg. a Memorandum Opinion of this Court; see also Commercial Iron Works v. Commissioner, 166 F.2d 221, 224 (5th Cir. 1948). When the case involves a closely held corporation with the controlling shareholders setting their own level of compensation as employees, the reasonableness of the compensation is subject to close scrutiny. Owensby & Kritikos, Inc. v. Commissioner, supra at 1324. Citing *136 L & B Pipe & Supply Co. v. Commissioner, T.C. Memo. 1994-187; Mortex Manufacturing Co. v. Commissioner, T.C. Memo. 1994-110; and Automotive Inv. Dev. Inc. v. Commissioner, T.C. Memo. 1993-298, petitioner contends that the bonus amounts that were paid to Polidori during the years in issue were reasonable based on Polidori's role as the key employee of petitioner; the growth and profitability of petitioner; and petitioner's consistent payment of bonuses to all of its employees. There are significant distinctions between the cases relied on by petitioner and the facts here. In L & B Pipe, the shareholder-employees considered input from an independent certified public accountant (C.P.A.) in determining compensation levels each year, and the C.P.A. indicated that the corporation had outperformed its competitors year after year. Moreover, the taxpayer's expert there demonstrated to our satisfaction that the compensation that was paid to the shareholder-employees was within an appropriate range. In Mortex Manufacturing Co., we found that the corporation had a longstanding plan that the *137 officer-stockholders were to receive total compensation of approximately 30 percent of net sales. In Automotive Inv. Dev. Inc., the shareholder-employee's compensation was determined based on a constant formula that resulted in amounts that were well within industry norms. Here, in contrast, the record does not indicate that, during the years in issue, Polidori determined his compensation amounts based on any consistently applied formula or plan. Furthermore, although Van Valkenburg made recommendations to Polidori regarding Polidori's compensation, we have no reason to believe that Van Valkenburg's recommendations took into account industry norms or any performance standards. Petitioner introduced the expert report of Ronald D. Eller (Eller) in which Eller calculated petitioner's return on equity on a consolidated basis for the years in issue and compared these percentages to the average return on equity of the Standard & Poor's 500 Companies (S & P 500). Petitioner contends that, based on these return on equity calculations, a hypothetical independent investor would be pleased with petitioner's performance and would not object to the compensation that was paid to Polidori. *138 Respondent contends that the use of consolidated figures is prohibited by section 1502 and the regulations promulgated thereunder; that it is unsound to use combined figures from a consolidated group to justify compensation paid by a parent; and that, in any event, the computation of the consolidated return on equity is incorrect. Computation of the appropriate return on equity is not determinative here, because the record does not provide any standard upon which to evaluate whether independent investors, who have not received any dividends, would be pleased. We are not persuaded that comparisons between petitioner, a closely held corporation, and the S & P 500 are appropriate. Compare L & B Pipe & Supply Co. v. Commissioner, supra (taxpayer introduced an expert who testified as to levels of dividend return, retained earnings growth, shareholder's equity growth, and capital appreciation factors that would satisfy independent investors). Nevertheless, on this record, we are persuaded that petitioner is entitled to a greater compensation deduction than that allowed by respondent for the tax year ended May 31, 1988. We are satisfied that Polidori *139 was a key employee of petitioner and contributed significantly to its growth and success. In reaching our best judgment, we conclude that total compensation of $ 315,000 is a reasonable amount. This amount represents the total compensation allowed by respondent, $ 135,000, plus $ 180,000. Pepsi-Cola Bottling Co. of Salina, Inc. v. Commissioner, 61 T.C. 564, 568 (1974), affd. 528 F.2d 176 (10th Cir. 1975); see also Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, limits to compensation exist even for the most valuable employees. Owensby & Kritikos, Inc. v. Commissioner, supra at 1325. We are not satisfied that the compensation deductions of $ 360,002 and $ 405,000, allowed by respondent for the tax years ended May 31, 1989, and May 31, 1990, respectively, are less than a reasonable amount for the services of Polidori. In his report and testimony, Eller indicated that he had difficulty in locating corporations that are comparable to petitioner; Eller concluded that the reasonable compensation range for Polidori "may be in the neighborhood" of *140 $ 400,000 to $ 500,000 per year. On this record, petitioner has not demonstrated that it is entitled to compensation deductions greater than the amounts allowed by respondent for petitioner's fiscal years 1989 and 1990. Decision will be entered under Rule 155.