RAPCO, INC., Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 970, Docket 95–4123.

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1996.

Decided June 4, 1996.

Stephen M. Howard, Lansdale, PA, for Petitioner–Appellant.

Carol A. Barthel, Attorney, Tax Division, Department of Justice, Washington, DC (Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, David English Carmack, Attorneys, Tax Division, Department of Justice, Washington, DC, of counsel), for Respondent–Appellee.

Before: McLAUGHLIN and CABRANES, Circuit Judges, and WEINSTEIN, District Judge.*

McLAUGHLIN, Circuit Judge:

RAPCO, Inc. ("Rapco") appeals from a judgment of the United States Tax Court (Mary Ann Cohen, *Judge* ). The Tax Court determined that certain compensation paid by Rapco to its president and thereafter deducted by Rapco on its corporate income tax returns was unreasonable. It ordered Rapco to pay income tax on the unreasonable amount. *See RAPCO, Inc. v. Commissioner,* 69 T.C.M. (CCH) 2238, 1995 WL 128452 (1995). For the reasons discussed below, we affirm.

## BACKGROUND

Rapco is a Connecticut corporation engaged in the automobile salvage business. Richard Polidori, who founded Rapco in 1979, is Rapco's president, and he owns approximately ninety-five percent of Rapco's stock. Although Rapco was a modest and struggling business through the early 1980's, it has since grown into a large and successful enterprise, and now operates several automobile salvage yards in various states.

Polidori, of course, has enjoyed corresponding financial success. As Rapco's president, he has received dramatically increasing compensation, often as end-of-the-year bonus payments:

---

* Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.

| Year | Form | Amount | Total |
|------|------|--------|-------|
| 1980 | Salary | $ 34,300 | $ 38,300 |
|      | Bonus | $ 4,000 | |
| 1981 | Salary | $ 41,895 | $ 46,895 |
|      | Bonus | $ 5,000 | |
| 1982 | Salary | $ 50,600 | $ 51,600 |
|      | Bonus | $ 1,000 | |
| 1983 | Salary | $ 56,600 | $ 56,600 |
|      | Bonus | — | |
| 1984 | Salary | $ 62,000 | $ 65,000 |
|      | Bonus | $ 3,000 | |
| 1985 | Salary | $ 130,506 | $ 130,506 |
|      | Bonus | — | |
| 1986 | Salary | $ 105,008 | $ 405,008 |
|      | Bonus | $ 300,000 | |
| 1987 | Salary | $ 77,646 | $ 577,646 |
|      | Bonus | $ 500,000 | |
| 1988 | Salary | $ 100,000 | $ 700,000 |
|      | Bonus | $ 600,000 | |
| 1989 | Salary | $ 266,668 | $ 766,668 |
|      | Bonus | $ 500,000 | |
| 1990 | Salary | $ 300,000 | $ 900,000 |
|      | Bonus | $ 600,000 | |

Although another of Rapco's officers made recommendations as to Polidori's compensation, it was Polidori himself who ultimately determined how much he should be paid.

Polidori's escalating salary reflected his significant role in Rapco's growth. He was responsible for "increasing business; making acquisitions; purchasing equipment; hiring management trainees and key employees; and overseeing expansion, sales, and operations, generally." *RAPCO*, 69 T.C.M. at 2240. Polidori also personally guaranteed large loans to Rapco that were instrumental in the company's growth.

In computing its corporate income tax, a corporation may deduct from income "a reasonable allowance for salaries or other compensation for personal services actually rendered." 26 U.S.C. § 162(a)(1). Rapco filed tax returns, always deducting the full salary and bonus paid to Polidori. The Internal Revenue Service ("IRS"), however, sent Rapco a deficiency notice for the 1988, 1989, and 1990 tax years.

The IRS informed Rapco that the total compensation paid to Polidori for those three years was unreasonable, and demanded payment of taxes on the disallowed amount:

| Year | Allowed | Disallowed |
|------|---------|------------|
| 1988 | $ 135,003 | $ 564,997 |
| 1989 | $ 360,002 | $ 406,666 |
| 1990 | $ 405,000 | $ 495,000 |

The IRS's determination of what constituted a "reasonable" salary and bonus for Polidori's services was based, at least in part, on Rapco's pre-incorporation minutes, which provided that the president's yearly bonus should be twenty-five percent of net operating profits, limited to a maximum of thirty-five percent of the president's base salary.

Rapco filed a petition in the United States Tax Court, pursuant to 26 U.S.C. § 6213(a), seeking a redetermination of the deficiencies asserted by the IRS. Having set the matter for trial, the Tax Court issued a standard pre-trial order, requiring that any documents to be used at trial had to be produced to the other side at least fifteen days before the first day of the trial session.[1] Rapco, however, gave the IRS most copies of Polidori's promissory notes and personal guarantees of Rapco's loans just three days before the first day of the trial session. Other documents were delivered by Rapco the very morning of the actual trial. When Rapco then offered those documents into evidence, the IRS ob-

---

**1.** In the Tax Court, cases are scheduled to be heard during multi-day, multi-case "trial sessions." Typically, all parties to all cases scheduled for a particular session are told to report, ready to try their case, at 10:00 AM on the first day of the trial session. At that time, the court discusses the cases with the parties to determine the approximate length of each trial, and the cases are then ordered for trial during the session, with each trial beginning upon completion of the one before. Thus, while a case is "called" on the first day of the session, the actual trial for that case may not occur until days later. *See generally* Tax Court Rule 132; 2A Casey, Donoghue & Doheny, *Federal Tax Practice* § 8.1 (1994).

The first day of Rapco's trial session was Monday, June 6, 1994. Rapco delivered the bulk of the guarantee documents on the afternoon of Friday, June 3—twelve days late. The trial actually started on Wednesday, June 15.

jected, arguing that Rapco's tardiness made it impossible for the IRS to determine the authenticity of the documents and to investigate the circumstances under which the loans and guarantees were made. The Tax Court sustained the objection and refused to admit the documents into evidence.

After trial, the Tax Court found that Rapco failed to prove that the amounts allowed by the IRS for 1989 and 1990 were less than reasonable. Finding that the IRS had disallowed too much for 1988, however, the court added $180,000 to the amount allowed for that year. Rapco now appeals, *see* 26 U.S.C. § 7482(a)(1), arguing that the Tax Court erred: (1) in refusing to admit the documents pertaining to Polidori's personal guarantees of Rapco's loans; and (2) in finding that the amounts allowed by the IRS for the 1989 and 1990 tax years were reasonable compensation for Polidori's services.

## DISCUSSION

### I. *The Guarantee Documents*

■ Rapco argues that the Tax Court abused its discretion in refusing to admit the documents pertaining to Polidori's personal guarantees of Rapco's loans. Although Rapco admits that those documents were turned over after the deadline provided in the pretrial order, Rapco asserts that the Tax Court should have amended the order to allow admission of the disputed documents. We find that the Tax Court did not abuse its discretion.

■ Tax Court Rule 110(e) provides that, like any other court, "[t]he [Tax] Court may, in its discretion, issue appropriate pretrial orders." *See* Tax Court Rule 110(e); *cf.* Fed.R.Civ.P. 16(e). We review a trial court's decision whether to amend or modify a pretrial order only for an abuse of that discretion. *See Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993); *Cruz v. United States Lines Co.*, 386 F.2d 803, 804 (2d Cir.1967); *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 844 (11th Cir.1991), *cert. denied*, 506 U.S. 1078, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993). Appropriate factors to consider include: "(1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party." *Dunlap–McCuller*, 980 F.2d at 158 (citing *Beissel v. Pittsburgh & Lake Erie R.R.*, 801 F.2d 143, 150 (3d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987)). Prejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pretrial order where manifest injustice will result. *Cf.* Fed.R.Civ.P. 16(e); *see also Smith v. Ford Motor Co.*, 626 F.2d 784, 795 (10th Cir.), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981); 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1527 at 287 (1990).

Here, Rapco's late delivery of the guarantee documents prejudiced the IRS. Specifically, the IRS was unable to discuss the loans with the lenders themselves, to discover the circumstances under which the guarantees were given. Although there was a nine-day delay between the first day of the trial session and the start of the actual trial, the IRS's ability to investigate the circumstances surrounding the guarantees was severely crimped. The IRS effectively had only seven business days between Rapco's delivery of the documents and the trial. A thorough investigation during this time would have been difficult if not impossible—the IRS had to be ready to go to trial at any moment. *See* Tax Court Rule 132(c); 2A Casey, Donoghue & Doheny, *Federal Tax Practice* § 8.1 (1994).

Although there is no direct evidence that Rapco acted willfully in withholding the guarantee documents, it cannot go unnoticed that Rapco delivered most of these documents to the IRS on a Friday afternoon, with the trial session scheduled to start the next Monday morning. Other documents were not delivered until the morning of the trial itself, a full nine days into the trial session. Furthermore, despite having known of the deadline for six months, Rapco offered no explanation for failing to meet it other than that it had been "trying to locate [the] documents."

Any prejudice to Rapco by exclusion of the documents was minor. As discussed below, personal guarantees of corporate loans are only one of many factors to be considered in evaluating the reasonableness of an employee's compensation. And, as even Rapco concedes, although the guarantee documents themselves were not admitted into evidence, the Tax Court nonetheless allowed substantial testimony about the guarantees. The court was perfectly aware that Polidori had guaranteed several sizable corporate loans, and was able to consider Polidori's personal financial exposure in making a reasonableness determination.

Under such circumstances, the Tax Court did not abuse its discretion in refusing to modify the pre-trial order to allow admission of the guarantee documents.

## II. *Reasonable Compensation*

Rapco contends that the Tax Court erred in finding that the amounts allowed by the IRS (for the 1989 and 1990 tax years) were reasonable compensation for Polidori's services. We disagree.

▬ What factors are to be considered in making a reasonableness determination is a question of law, which we review *de novo;* but, the ultimate determination, based on those factors, that the compensation paid was "reasonable" is, at most, a mixed question of law and fact, which we review only for clear error. *Cf. Bausch & Lomb Inc. v. Commissioner,* 933 F.2d 1084, 1088 (2d Cir.1991); *see also Owensby & Kritikos, Inc. v. Commissioner,* 819 F.2d 1315, 1323–24 (5th Cir.1987) (reasonableness of compensation is a question of fact); *Elliotts, Inc. v. Commissioner,* 716 F.2d 1241, 1245 (9th Cir.1983) (same). The taxpayer has the burden of proving that the IRS's determination of reasonable compensation is incorrect. *See* Tax Court Rule 142(a); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). The taxpayer's burden of showing that it is enti-

tled to a larger deduction for compensation than allowed by the IRS is particularly heavy when that compensation is paid to a shareholder-officer. *See Pepsi–Cola Bottling Co. v. Commissioner,* 528 F.2d 176, 179 (10th Cir.1975).

This Court has had no occasion to enunciate comprehensively the factors to be considered in evaluating the reasonableness of employee compensation under 26 U.S.C. § 162(a)(1). The Ninth Circuit, however, in *Elliotts, Inc. v. Commissioner,* 716 F.2d 1241 (9th Cir.1983), exhaustively catalogued and analyzed the relevant considerations. *See also Owensby & Kritikos,* 819 F.2d at 1322–25 (discussing some factors). In *Elliotts,* the Ninth Circuit isolated five broad categories:

(1) *Employee's role in the company:* including the employee's position, hours worked, and duties performed, plus any special duties or role (such as personally guaranteeing corporate loans);

(2) *External comparison with other companies:* salaries paid to comparable employees in similar companies;

(3) *Character and condition of the company:* including the sales, net income, capital value, and general economic fitness of the company;

(4) *Potential conflicts of interest:* ability to "disguise" dividends as salary, particularly when the employee is the sole or majority shareholder, and/or where a large percentage of the compensation is paid as a "bonus";[2] and,

(5) *Internal consistency in compensation:* consistency of the compensation system throughout the ranks of the company.

*Elliotts,* 716 F.2d at 1245–48.

▬ No one factor is dispositive. *See id.* at 1245; *Owensby & Kritikos,* 819 F.2d at 1323. Furthermore, the court should assess the entire tableau from the perspective of an independent investor—that is, given the dividends and return on equity enjoyed by a

---

**2.** Because compensation to employees is deductible from the corporation's income, but dividends paid to shareholders are not, *see Owensby & Kritikos,* 819 F.2d at 1322–23, the corporation will benefit by disguising "dividends" (which usually represent a share of quarterly or yearly profits) as compensation whenever possible. This is typically done by paying shareholder-employees a profit-based, year-end "bonus"—ostensibly "compensation," but practically no different from a dividend.

disinterested stockholder, would that stockholder approve the compensation paid to the employee? *See Elliotts,* 716 F.2d at 1245.

■ We find that the *Elliotts'* factors, examined from the perspective of an independent investor, are an appropriate standard to evaluate the reasonableness of employee compensation. These factors adequately balance the company's financial fitness and role in the market, and the employee's responsibility for that role. They also require a suitable comparison of the employee's compensation to other employees in the same company, and similar employees in analogous companies—sturdy benchmarks for determining the reasonableness of an employee's reward. And, these considerations properly patrol a company's ability to substitute salary for dividends by recognizing, in the first place, a shareholder-officer's temptation to do so, and, then, by focusing on the disinterested investor's perspective.

■ We also conclude that the Tax Court's application of these factors, and its resulting decision that the amount of Polidori's salary allowed by the IRS was reasonable, is not clearly erroneous. The court recognized in its opinion that Polidori was a key employee—indeed *the* key employee—of Rapco. The court noted his contributions to Rapco's growth, and his long hours on Rapco's behalf.

However, the court also observed that: (1) Rapco's pre-incorporation minutes erected a structure for bonus compensation which Rapco utterly ignored when paying Polidori; (2) Rapco could point to no consistent method for bonus calculation; (3) Rapco's compensation scheme was bonus-heavy and salary-light, suggesting masked dividends; (4) no actual dividends had been paid to anyone during the years at issue; (5) as a ninety-five percent owner of Rapco, and the ultimate decision-maker as to his own salary, Polidori had a definite conflict of interest; and (6) Rapco's very own financial expert testified that, for a company such as Rapco, $400,000–$500,000 was fair compensation for Polidori's services. Accordingly, we are not persuaded that the Tax Court's conclusion—the amount of Polidori's compensation allowed by the

IRS for the 1989 and 1990 tax years was reasonable—is clearly erroneous.

Rapco places great weight on its belief that the Tax Court gave too little consideration to Rapco's impressive return on equity when evaluating the likely reaction of a disinterested shareholder to Polidori's compensation. But the court explicitly conceded that Rapco had a substantial return on equity. The Tax Court correctly acknowledged, however, that return on equity is only one factor. *See, e.g., Owensby & Kritikos,* 819 F.2d at 1326–27 (upholding IRS deficiency notice despite admittedly impressive return on equity); *Elliotts,* 716 F.2d at 1248 (remanding for consideration of return on equity as one of many factors). And, the court appropriately discounted this factor, in the absence of evidence comparing Rapco's return on equity to that of *similar* companies—Rapco only produced evidence comparing its return on equity with publicly-traded, Standard & Poor's 500 corporations.

In a similar vein, Rapco also argues that the Tax Court gave too much weight to Rapco's pre-incorporation minutes, which, as noted, provided that the president's yearly bonus should be twenty-five percent of net operating profits, limited to a maximum of thirty-five percent of the president's base salary. Rapco waves this aside, asserting that its bonus formula had been ignored for years in determining bonus amounts, and therefore had been "implicitly overruled" by Rapco's board of directors. Rapco also claims that, in any event, the formula was outdated and unfairly limited Polidori's compensation.

Even were we to accept this cavalier dismissal of the pre-incorporation minutes, it is obvious that the Tax Court did not rigidly enforce those provisions anyway. The court added $180,000 to the allowable amount of Polidori's compensation for the 1988 tax year, finding that the IRS had allowed too little. This addition allowed Rapco to deduct a salary paid to Polidori that clearly exceeded the bonus formula, and brought Polidori's allowable 1988 salary into conformity with the court's consideration and balancing of the many factors enunciated above.

In sum, we find (a) that the Tax Court applied the appropriate factors to determine the reasonableness of Polidori's compensation, and (b) that the court's conclusion that the amounts allowed for the 1989 and 1990 tax years were reasonable is not clear error.

CONCLUSION

We have considered all of Rapco's additional arguments, and find them unavailing. Accordingly, the judgment of the Tax Court is AFFIRMED.