T.C. Memo. 1999-155

UNITED STATES TAX COURT

DEXSIL CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1349-93.                          Filed May 5, 1999.

<u>William J. Doyle</u>, <u>Charles P. Reed</u>, and <u>Mark R. Kravitz</u>,
for petitioner.

<u>Robert E. Marum</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

COHEN, <u>Chief Judge</u>:  This case is before us on remand from
the Court of Appeals for the Second Circuit in <u>Dexsil Corp. v.
Commissioner</u>, 147 F.3d 96 (2d Cir. 1998), vacating and remanding
T.C. Memo. 1995-135.  The Court of Appeals directed us:

> to make specific findings regarding the following
> questions:  (1) whether a hypothetical investor would

>accept the compensation paid to [Theodore R.] Lynn;
>(2) whether Lynn was paid according to a long-standing
>and consistently applied contingent compensation
>formula, and if so, whether his salary was reasonable
>in light of this formula; (3) whether Lynn's
>compensation compared favorably with the compensation
>paid by similar companies for comparable services,
>given the many roles Lynn played at Dexsil; and
>(4) whether, after reconsideration of these factors,
>the balance of factors has shifted in favor of Dexsil
>such that it has met its burden of proving that Lynn's
>compensation was reasonable. [147 F.3d at 103.]

By agreement of the parties, supplemental briefs were filed in which they argue their respective positions on the above issues.

Background

In our prior Memorandum Findings of Fact and Opinion, T.C. Memo. 1995-135, we concluded that $300,000 and $320,000 for the fiscal years 1989 and 1990, respectively, was reasonable compensation for Theodore R. Lynn (Lynn), the majority shareholder, president, and a director of petitioner. We disallowed petitioner's deductions, to the extent of $76,540 in 1989 and $168,000 in 1990, in excess of the amounts that we determined to be reasonable. We agreed with petitioner that the amount paid to Lynn's son, Timothy D. Lynn (T.D. Lynn), a shareholder, vice president, and director, was reasonable. We also disallowed in part a deduction claimed for compensation to another son, Theodore B. Lynn (T.B. Lynn), and a deduction for director's fees.

Hypothetical or Independent Investor Test

Petitioner argues that Lynn's compensation passes the hypothetical investor test, asserting that "there is overwhelming evidence in the record that Dexsil's financial performance would have overjoyed a hypothetical investor."  The data on which petitioner relies, however, is ambiguous.  As set forth in the tables in the Court of Appeals' opinion, Dexsil Corp. v. Commissioner, 147 F.3d at 99, petitioner's return on equity varied substantially from year to year and declined for the years in issue.  By another calculation, the return on equity over the time that the company was controlled by Lynn averaged an annual rate of 15 percent.  The increase was almost entirely in retained earnings; dividends were an insignificant percentage of the calculation.  Lynn's salary and bonus, on the other hand, increased substantially over the same years.

The only evidence at trial relating to the rate of return acceptable to a hypothetical investor was petitioner's expert's compilation of data on New York Stock Exchange companies.  There was no evidence, however, that those companies were comparable to petitioner or that the average return of those companies would be satisfactory to a hypothetical investor in a company with the degree of risk associated with petitioner's business.  There was no analysis of the significance of dividends paid as contrasted to unrealized appreciation.  Thus, we could not determine that

petitioner's rate of return, standing alone, would have satisfied a hypothetical independent investor. Cf. Rapco, Inc. v. Commissioner, 85 F.3d 950, 955 (2d Cir. 1996), affg. T.C. Memo. 1995-128.

Petitioner now seeks to compare the rate of return in this case to that in other cases in which the reasonableness of compensation paid to shareholder-officers of closely held companies was determined. Each case, however, must be decided on the evidence in that case and on the specific characteristics of the company and the employee involved. Cases relied on by petitioner, such as Donald Palmer Co. v. Commissioner, T.C. Memo. 1995-65, affd. without published opinion 84 F.3d 431 (5th Cir. 1996), involved companies that are totally different in operation, in sharing of managerial responsibility, and in risks associated with the business of the company. The deficiencies in the expert evidence in this case cannot be overcome by surveys of results in different cases decided on different evidence. Petitioner's proposed method of surveying cases suggests that we decide the issue as "what the traffic will bear", excluding consideration of all nonlitigated compensation arrangements and other relevant market data.

Petitioner also argues that the testimony of actual shareholders, who were pleased with the return on their minimal investments and small percentage holdings in petitioner, supports

the conclusion that hypothetical independent investors would have been satisfied with the compensation paid to Lynn. We were not and are not persuaded, however, that the witnesses called by petitioner in that regard were independent. They were long-standing friends and admirers of Lynn. In any event, they were not aware of how the compensation was established and, apparently, were only consulted about Lynn's compensation in relation to trial preparation, at which time they had an indirect interest in the outcome of the case.

The Court of Appeals stated in part: "in this circuit the independent investor test is not a separate autonomous factor; rather, it provides a lens through which the entire analysis should be viewed. See Rapco, Inc., 85 F.3d at 954-55." Dexsil Corp. v. Commissioner, 147 F.3d at 101. As suggested by petitioner's expert, an independent investor deciding on the value of the company would look to what it would take to replace the current management in terms of comparable salaries. The hypothetical or independent investor standard does not look solely to the rate of return but looks to other factors as part of "the entire tableau." See Rapco, Inc. v. Commissioner, supra at 954-955, where the Court stated:

> We find that the Elliotts' [Elliotts, Inc. v.
> Commissioner, 716 F.2d 1241 (9th Cir. 1983)] factors,
> examined from the perspective of an independent
> investor, are an appropriate standard to evaluate the
> reasonableness of employee compensation. These factors

adequately balance the company's financial fitness and role in the market, and the employee's responsibility for that role. They also require a suitable comparison of the employee's compensation to other employees in the same company, and similar employees in analogous companies--sturdy benchmarks for determining the reasonableness of an employee's reward. And, these considerations properly patrol a company's ability to substitute salary for dividends by recognizing, in the first place, a shareholder-officer's temptation to do so, and, then, by focusing on the disinterested investor's perspective.

Petitioner's position is that an investor in a closely held company such as petitioner, dominated by family members, should be satisfied with a return equal to or even less than the return paid by a company listed on a major exchange. If that were the law, any amount of compensation would be regarded as reasonable as long as a minimal average return, computed by adding appreciation as well as actual payments to shareholders, was reflected on the company's balance sheets. We believe that petitioner's premise is erroneous. We conclude that a hypothetical independent investor would not accept Lynn's compensation as reasonable where consideration is given to all relevant factors.

"Contingent Compensation Formula"

Petitioner contends that the $302,340 and $410,000 bonuses paid to Lynn during the respective years in issue were pursuant to a formula adopted in 1982 by which Lynn's annual bonus would be equal to approximately 11 percent of sales. That argument is

based on a history that shows that Lynn's compensation for fiscal years ended from 1982 through 1990 equaled 10, 11, or 12 percent of sales.  There was no testimony, however, indicating when and how the alleged formula was established.  In response to leading questions, Lynn testified as follows:

> Q  And over the years has your compensation, and in particular in '89 and '90, borne any relationship to the sales and, if so, approximately what?
>
> A  Approximately about 11 or 12 percent, something like that.
>
> Q  Has that been fairly consistent over the years?
>
> A  Very consistent.
>
> Q  And in terms of salary -- your total compensation, in terms of salary and bonus, how is that broken down and why do you do it that way?
>
> A  We met with the -- at the end of every year, after the financial statement was audited and prepared, we would sit down and determine a compensation.  It was kind of an informal thing.  We would set a compensation plan for the next year based on the sales.
>
> My salary didn't increase very much, but it was mostly on performance, how we performed, how the sales came in and whether we needed cash or what our cash needs were, but the actual paying of the bonus at the time was determined by the cash flow.

Petitioner's certified public accountant testified as follows:

> Q  Okay, during these years, could you tell the Court what participation, if any, you had in setting the compensation for Ted Lynn?
>
> A  Well, during the audit and after audit, Ted and I would get together and we would discuss what salaries were and we would try to project what salaries should be in the coming year.

During '89 we looked at past salary history. Actually prior to '89 we had set up a performance-based type salary. We were salarying based on a percentage of sales. We came up with a percentage of around 11 percent back in the earlier years when the corporation started to become profitable and we just kept it going.

This testimony was vague and had the earmarks of retrospective argument. During the first year that the relevant comparison can be made between Lynn's compensation and sales, the company suffered a loss and Lynn was paid $10,000. There is no evidence from which we can determine whether that compensation was reasonable at that time. There is no explanation of why the alleged 11 percent formula would have been 10 percent in 5 years, 11 percent in 2 years, and 12 percent in 2 years out of the 9 years over which the relationship between Lynn's compensation and gross sales is observable. No other witness corroborated this alleged formula. We were not persuaded and are not persuaded that the formula existed or was consistently applied.

Lynn's Many Roles

On remand, petitioner contends that we should add the compensation paid by Daedalus Enterprises, Inc. (Daedalus), to its chief executive officer (CEO) ($158,962) and to its chief financial officer ($78,375), and then double it ($474,674), as we doubled in our prior opinion the compensation paid to the CEO of Daedalus. This computation, according to petitioner, supports the $488,000 paid to Lynn in 1990.

At trial Lynn testified:

> A  Obviously, I'm the president and the chief financial officer.  I also attend every sales meeting, every research meeting.  I worked nights on installing the equipment and moving into the new facility.  I keep up with the literature.
>
> I don't run the day-to-day operation but I have meetings with the vice president, the sales manager when he's in town and not on the road.  I'm involved with the research and development of all the new products.
>
> Q  And who deals with the banks and the lawyers?
>
> A  I do.
>
> Q  Who deals with the shareholders?
>
> A  I deal with the shareholders.
>
> Q  And do you have an estimate of how many hours a week in '89 and '90 you devoted to the interests of Dexsil?
>
> A  In those years I probably put about 50 hours a week at work, at the plant, and to some of the shows.  I take reports home that are prepared by the consultants and the research director and go over lab results and I do that at home.
>
> I also meet with shareholders and consultants at night and that type of thing.
>
> Q  Taking the time at the plant and at home that you spend on Dexsil matters, approximately what would that come to a week during -- in your best judgment -- during the years 1989 and 1990?
>
> A  Maybe 60 to 65 hours a week.

The day-to-day operations of the company were overseen by T.D. Lynn, the vice president and general manager.  According to petitioner, all employees reported to T.D. Lynn, before they

reported to his father, Lynn. We concluded that T.D. Lynn's compensation was reasonable, and we took his duties into account when we determined the amount of reasonable compensation for the other officers. Respondent's expert, David J. Bowering, also took those factors into account in multiplying the compensation paid to the Daedalus CEO by 150 percent, and we took the multiple roles into account in determining reasonable compensation for Lynn. We do not agree with petitioner that the salaries of two separate officers should be both combined and doubled, because to do so would be to duplicate the adjustment that we previously made.

Petitioner refers to losses sustained by Daedalus in earlier years in support of its argument. Petitioner, however, also had meager and loss years. We recognized in our prior opinion and recognize now the contributions that Lynn made to the success of petitioner. As the court stated in Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1325 (5th Cir. 1987), affg. T.C. Memo. 1985-869, "limits to reasonable compensation exist even for the most valuable employees." Upon our review of the entire record and with careful consideration of the opinion of the Court of Appeals, we believe that we made the appropriate allowances on the evidence in this case.

Burden of Proof

Petitioner on remand relies almost exclusively on the alleged compensation formula in arguing that, on reconsideration, Dexsil has satisfied its burden of proving that Lynn's compensation was reasonable.  For the reasons set forth above, we do not believe that the formula was established as alleged by petitioner in 1982 or was consistently applied.  We do not believe that the hypothetical investor would have looked solely at rate of return and ignored the availability of other executives at less compensation than that paid Lynn; we do not believe that Lynn was the sole reason for Dexsil's success to the extent that other officer-shareholders were in the cases relied on by petitioner; and we do not believe that the evidence supports a determination that reasonable compensation to Lynn in petitioner's fiscal years ended 1989 and 1990 exceeded $300,000 and $320,000, respectively.

As we indicated in our prior memorandum opinion, the data compiled by respondent's expert showed that Lynn's compensation was more than four times the median CEO compensation for seven comparable companies during the years in issue.  There was no evidence that Lynn's compensation for the years in issue was intended to compensate him for any past undercompensation. Petitioner's return on equity was declining during the years in issue, and the dividends paid were negligible in comparison to

increased sales.  We do not believe that the hypothetical independent investor, under these circumstances, would have approved hikes in Lynn's compensation of 32 percent ($98,660) and 30 percent ($111,460) during those years.

On careful reconsideration pursuant to the mandate of the Court of Appeals,

<u>Decision will be entered for the same years in the same amounts as previously entered in this case</u>.