IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10322

Summary Calendar
_____


In The Matter Of: TOPCOR INC.

                    Debtor


--------------------------------

     PAUL C NORDBERG, Trustee of the Estate of Topcor Inc

                              Appellant

          v.

     CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY OF
     CHICAGO

                              Appellee

_____

            Appeal from the United States District Court
               for the Northern District of Texas
                  No. Civ.A. 3:01-CV-510-M
_____
                    October 28, 2002
Before KING, Chief Judge, and SMITH and DENNIS, Circuit Judges.

PER CURIAM:[*]

     This case is an appeal from the district court's Memorandum

Order and Opinion affirming both the Order Denying Plaintiff's

------------------------

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Motion to Amend Complaint and the Final Judgment entered by the bankruptcy court on November 8, 2000. For the reasons stated below, we affirm the district court's Memorandum Opinion and Order.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Before setting out the facts, the complicated nature of the dealings in this case suggests a roadmap of the involved parties would be in order. At the time of the loans in question, Clint Murchison owned several companies, in whole or in part, including: Topcor, Inc. ("Topcor"), Topcor Financial ("Financial"), Calfeed, Inc., ("Calfeed"), and NOE Corporation ("NOE"). Topcor was the sole shareholder of Financial; it also owned 90% of NOE and, through Corland (an additional subsidiary), 80% of Calfeed. NOE, in turn, owned 90% of New Orleans East, Inc., a real estate holding company whose principal asset was a large tract of undeveloped land within the City of New Orleans (the "NOE Parcel").

In 1981, Continental Bank, N.A., of Chicago ("Continental")[2] agreed to lend Financial $50 million, an obligation that Topcor and Murchison both partially guaranteed. By 1983 Murchison was having financial difficulties; on June 15, Murchison agreed to have Topcor pledge 468 shares of NOE (out of a total of 900 shares of NOE's common stock outstanding) to Continental to

_____

[2]   The Appellee in this case, Bank of America, N.A., is the successor-in-interest to Continental.

secure payments of $4 million in interest on various loans, including the 1981 loan from Continental to Financial and a separate $7.5 million note owed by Calfeed to Continental. Unlike the Financial loan, Topcor was not a guarantor on the Calfeed note.

On October 4, 1983, Topcor borrowed $10 million from Arab Banking Corporation ("ABC"); the loan agreement specifically stated that up to $6.5 million of the loan could be used to meet the "working capital" requirements of other Murchison-controlled entities. As collateral, Topcor gave ABC 900 shares of NOE, including the 468 shares it had already given to Continental as collateral on the interest payments. Continental released the NOE shares to Topcor on the same date that ABC transferred the loan proceeds to Topcor; an officer for Continental personally delivered the certificates evidencing the shares to an officer for ABC in New York. When Topcor received the proceeds, it sent $4 million to Continental to satisfy its debt. Continental applied $1,093,037.66 to pay past due interest owed on the Calfeed note; it applied the balance of the $4 million to interest (both overdue and prepaid) on the Financial loan.

On February 26, 1986, Topcor filed a Chapter 11 petition for bankruptcy. No portion of the $10 million loan from ABC had been repaid. On March 27, 1990, Topcor's trustee[3] in bankruptcy

---

[3]    In 1990, Topcor's trustee in bankruptcy was A.M. Mancuso.  Nordberg was appointed successor trustee on December 7,

initiated a proceeding against Continental alleging that the $1,093,037.66 transferred to Continental was a fraudulent transfer under state law.[4]  As such, the trustee sought to avoid the transfer under 11 U.S.C. § 544(b).[5]

The state law at issue is § 24.005(a) of the Texas version of the Uniform Fraudulent Transfer Act.  Section 24.005(a) provides:

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1)  with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > (A)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relations to the business or transaction; or
> > (B)  intended to incur, or believed or reasonably should have believed that the debtor would

---

1998.

[4]   The trustee did not make any § 544(b) claim as to the remaining $2,906,962.34 transferred to Continental.  As Topcor had guaranteed Financial's debt to Continental, Topcor received adequate consideration in the form of decreased liability as guarantor.

[5]   Section 544(b) states in relevant part that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable" under applicable state law.  11 U.S.C. § 544(b) (2000).

4

> incur, debts beyond the debtor's ability to
> pay as they became due.

TEX. BUS. & COM. CODE ANN. § 24.005(a) (Vernon 2002).[6]

Section 24.005(a) provides two theories for a debtor seeking to avoid a transfer: actual fraud (subsection 1) or constructive fraud (subsection 2).  While the original complaint alleged both actual and constructive fraud as potential causes of action, in the Pre-Trial Order Nordberg made only a constructive fraud claim based on a lack of reasonably equivalent value.  However, on May 12, 2000 - shortly before the trial - Nordberg filed a Motion for Leave to Filed Amended Pretrial Brief and Amended Proposed Findings of Fact and Conclusions of Law in order to reinstate his actual fraud claim.  The bankruptcy court denied the motion.  On July 28, 2000, Nordberg (having preserved the issue during the four-day trial) filed a Motion to Amend Complaint to Conform to the Evidence Admitted at Trial, once again seeking to reinstate his actual fraud claim.  The bankruptcy court denied that Motion as well and, on November 2, 2000, the court found that Nordberg had failed to prove a fraudulent transfer had occurred.

Nordberg appealed to the District Court for the Northern District of Texas.  In his appeal, Nordberg raised three issues: (1) whether the bankruptcy court erred in holding that Nordberg failed to prove that ABC received less than reasonably equivalent

---

[6]   While the trustee who filed the complaint was not the original debtor in the case, the trustee was, in effect, stepping into ABC's shoes by seeking to avoid the transfer to Continental.

5

value; (2) whether the bankruptcy court erred in finding that, in effect, ABC had consented to the transfer of funds by Topcor to Continental; and (3) whether the bankruptcy court had erred in refusing to grant either of the trustee's motions to reinstate the actual fraud claim against Continental.[7]  The district court found for Continental on each of Nordberg's three issues.[8]  <u>In re Topcor, Inc.</u>, No. Civ.A 3:01-CV-510-M, 2002 WL 226346 (N.D. Tex. Feb. 13, 2002).  Nordberg timely appealed to this court, asserting the same three issues.  Continental also reasserts its limitations cross-appeal.

## II.  ANALYSIS

### A.  Constructive Fraud

The bankruptcy court found that Nordberg failed to prove constructive fraud under § 24.005(a)(2).  Findings of fact by the bankruptcy court will not be overturned unless they are clearly erroneous.  <u>In re Jack/Wade Drilling, Inc.</u>, 258 F.3d 385, 387 (5th Cir. 2001).[9]  The bankruptcy court's finding that there was

---

[7]  Continental also cross-appealed, arguing that Nordberg's claims should be barred by the limitations period set forth in 11 U.S.C. § 546(a).

[8]  As a result, Judge Lynn did not reach Continental's § 546(a) cross-appeal.

[9]  Nordberg argues that a de novo standard, rather than the clearly erroneous standard, is appropriate because, in its findings of fact, the Bankruptcy court stated that Nordberg had presented "no evidence" as to the value of the NOE stock at the time of the transfer.  This court disagrees; regardless of what the Bankruptcy court stated, the totality of its Memorandum Opinion and Order demonstrates that it reached its conclusion

6

no fraudulent transfer was based on its conclusion that Nordberg failed to prove that the value of the NOE stock was not "reasonably equivalent" to the $1,093,037.66 that Continental received in exchange for the stock.

Section 24.005(a)(2) permits a creditor to avoid a transfer where it appears that the debtor "made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation." TEX. BUS. & COM. CODE ANN. § 24.005(a)(2) (Vernon 2002). A transfer has been made for a reasonably equivalent value so long as the value is "within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE ANN. § 24.004(d) (Vernon 2002). The determination of what constitutes a "reasonably equivalent value" must be made as of the time of the transfer, without the benefit of hindsight as to what actually transpired after the transfer that might have affected the value. In re Fairchild Aircraft Corp., 6 F.3d 1119, 1125-26 (5th Cir. 1993).

At the time of the transfer, NOE's main asset was the nearly 30,000 acre tract of land comprising the NOE Parcel. At trial, Nordberg argued that the NOE Parcel was worthless because certain regulatory decisions concerning flood insurance and drainage for the parcel had left it largely as unusable wetlands. As a

_____

based upon a careful weighing of the evidence presented. The clearly erroneous standard of review therefore applies.

result, the stock ABC received in exchange for the loan - which represented about 90% of the ownership of NOE - was worthless. Nordberg presented as a witness Ronda Collum, a CPA, who confirmed that the value of the stock as of October 4, 1983 (the date of the transfer) must have been zero. Her reasoning for this finding was that Topcor itself valued the stock at zero in a February 1984 financial statement; because nothing had happened to the land or to NOE between October 4, 1983 and February 1984 that would have affected its value, she concluded that the value of the stock on October 4, 1983 must have been zero.

Continental countered this argument by presenting three separate appraisals of the NOE Parcel, each done close in time to October 4, 1983. Two of these appraisals had been conducted at the behest of ABC when it was deciding whether or not to take the NOE stock as collateral for its loan to Topcor. Each of the three appraisals put the approximate value of the NOE Parcel at more than $100 million (though the appraisals do assume that the flood insurance and drainage permits, which were ultimately denied, would be approved).

The bankruptcy court, while noting that the parties had presented conflicting evidence on the value of the NOE stock at the time of the transfer, ultimately found for Continental. Nordberg, as plaintiff, had the burden of proof on this issue. While Nordberg does present some evidence that the NOE stock was of little value at the time of the transfer, he does little to

8

explain away the three appraisals which tend to show otherwise. The argument that the appraisals are invalid because they assume the drainage and flood insurance permits will be granted is insufficient; at the time the transfer was made, there was no evidence that the permits would not (as expected) be granted.

In fact, the two appraisers hired specifically by ABC to value the land in connection with the Topcor loan placed the value of the NOE Parcel at approximately $100 million; if it had been expected at that time that the necessary permits would not be forthcoming, the appraised value of the NOE Parcel would have been far less. Because the three appraisals presented at trial tend to show that, as of October 4, 1983, the value of the NOE stock was approximately $100 million, the bankruptcy court found that Nordberg failed to meet his burden of proving that reasonably equivalent value did not pass in exchange for the NOE stock. That decision was not clearly erroneous.

B. Consent to the Transfer

Nordberg also argues that the bankruptcy court erred in finding that the transfer was not fraudulent because ABC consented to the use of the money to pay interest owed to Continental. This is also a question we review under a clearly erroneous standard.

We agree with the reasoning employed by the district court in disposing of this issue on appeal. The bankruptcy court, in ruling in favor of Continental, rested its judgment on two

9

separate and distinct bases: Nordberg failed to prove constructive fraud, and ABC consented to the use of the money by expressly stating in the loan agreement that up to $6.5 million of the loan could be used as "working capital" for any of the Murchison-owned enterprises.  Because either ground would be sufficient to uphold the final judgment in favor of Continental, a holding that the bankruptcy court was clearly erroneous in finding that ABC consented to transfer of funds to Continental would be no more than a harmless error.

Nevertheless, we agree that, on the record, it was not clearly erroneous for the bankruptcy court to find that ABC consented to use of the funds to satisfy interest payments owed to Continental on the Financial loan.  At trial, Continental presented testimony that one valid use of working capital is the payment of past-due interest (so long as the interest is not more than one year overdue).  Nordberg countered that definition of "working capital" with one of his own, but the bankruptcy court found that the weight of the evidence supported a finding that ABC consented to the transfer when it permitted Topcor to use the

10

funds as "working capital."[10]  The bankruptcy court's ruling was not clearly erroneous.

C.   Motions to Amend

Nordberg's final argument is that the bankruptcy court erred in refusing to permit him to amend the pre-trial order to include both the actual fraud claim and an additional claim that the balance of the $4 million loan should also be treated as a fraudulent transfer.[11]  This court reviews denials of such motions under an abuse of discretion standard.  In re Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996).

The trial court has "broad discretion" in deciding whether to permit a party to amend the pre-trial order.  Thomas v. Tex. Dept. of Criminal Justice, 220 F.3d 389, 394 (5th Cir. 2000).  "The order following a final pretrial conference shall be

[10]   Judge Abramson discounted much of Nordberg's testimony for two grounds: (1) Nordberg called himself as a fact witness even though he had not personally taken part in any of the transactions at issue; and (2) Nordberg stood to receive 50% of any damage award as a contingency fee.  The contingency in particular, while not improper as Nordberg was both the trustee in bankruptcy (who deserves some compensation for his services) and a fact witness rather than an expert witness, does tend to color Nordberg's testimony with questions of bias.  Even if he were an objectively neutral witness, though, the contents of the trial record would not be sufficient to warrant reversal of the bankruptcy court under a clearly erroneous standard of review.

[11]   Unlike the claim for actual fraud, the claim that the approximately $2.9 million that went to the Financial loan was a fraudulent transfer was not a part of the original complaint.

modified only to prevent manifest injustice." FED. R. CIV. P. 16(e). Factors to be weighed when deciding whether to permit amendment of a pre-trial order include: "(1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party." Rapco, Inc. v. C.I.R., 85 F.3d 950, 953 (2d Cir. 1996) (citation omitted).

Nordberg's first argument - that the Pre-Trial Order in this case was invalid because it was not docketed until after the beginning of the trial - is without merit. Nordberg's counsel signed the order (as did counsel for Continental); the bankruptcy judge also signed it before the trial began on May 23, 2000. This court agrees with the District court, which said that Nordberg's "attempt to invalidate what he himself took part in creating is not only illogical, but duplicitous." In re Topcor, Inc., at *5.

While the original complaint in this case included an actual fraud claim, Nordberg omitted that claim from the final Pre-Trial Order. The bankruptcy court found that this omission constituted a waiver of the actual fraud claim, a decision that this court does not find to be an abuse of discretion. In addition, permitting Nordberg to amend the pre-trial order to include a new (though related) cause of action less than ten days before the

12

trial was to begin would have unduly prejudiced Continental. Similarly, the bankruptcy court did not abuse its discretion by denying Nordberg's Motion to Amend Complaint to Conform to the Evidence Submitted at Trial. Permitting amendment after trial would have been even more prejudicial than permitting amendment before trial, since Continental would then have lost its opportunity to rebut the actual fraud argument at trial.

Even more prejudicial would be leave to amend the Pre-Trial Order to include a claim against the $2.9 million that went toward interest on the Financial loan. This claim, unlike the actual fraud claim, was not even a part of the original complaint. If Continental would be prejudiced by permitting Nordberg to add a claim about which he had at least provided some prior notice, the prejudice would be much more severe where no notice at all had been previously served on Continental. Therefore, the bankruptcy court did not abuse its discretion in denying Nordberg's motions.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's Memorandum Order and Opinion.